People of the State of Illinois, Plaintiff-Appellee, v. Alvin T. Smith, Defendant-Appellant.

Gen. No. 49,840.

First District, First Division.

March 29, 1965.

McCoy, Ming & Black, of Chicago (Ellis E. Reid, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial, defendant, Alvin T. Smith, a Chicago police officer, was found guilty of the offense of "official misconduct" (Ill Rev Stats 1963, c 38, § 33–3) on evidence which showed that he had solicited $50 from Paul Browning for the dismissal of a criminal charge against Browning. Defendant was admitted to probation for a term of three years, with the first six months to be served in the House of Correction. He appeals from the conviction and from the refusal of the court to modify the probation order.

Defendant contends (1) the indictment did not adequately allege and "the State has failed to prove the defendant guilty of 'official misconduct' under Illinois law. Therefore, the trial court should have directed a verdict for the defendant"; (2) "the verdict of the trial court is against the manifest weight of the evidence"; and (3) "the trial court erred in refusing to reduce defendant's sentence."

On November 5, 1961, defendant, Alvin T. Smith, arrested Paul Browning and charged him with petty theft and possession of stolen automobile license plates. On November 6, 1961, after a short hearing of the charges against Browning, the court, on motion of the State, struck the complaint, with leave to reinstate, in order that Smith might further investigate the charges.

On the evening of November 6, 1961, defendant Smith appeared at the apartment of Browning. After a conversation between Smith, Browning and Browning's wife, two police officers, who had been concealed in the apartment, appeared and arrested Smith. He was indicted for "bribery" and "official misconduct."

The "official misconduct" indictment charged that "Alvin T. Smith committed the offense of official misconduct, in that he, a police officer of the City of Chicago, acting in his official capacity, and with the intent to obtain a personal advantage for himself, per-

formed an act which he knows was not authorized by law, to-wit: the said Alvin T. Smith solicited a fee of $50 from Paul Browning to have the charge of petty theft and possession of fictitious license plates placed against said Paul Browning by said Alvin T. Smith on November 5, 1963, dismissed from court when said charge came up for hearing on November 6, 1963, contrary to the statute."

At the trial of the charges against defendant Smith, Browning and three police officers testified on behalf of the State. Browning testified that on the morning of November 6, while outside of the courtroom, Smith said, "I want to be precise, I can fix your case for fifty bucks . . . Is it worth that?" and Browning replied, "Yes, it's worth that, but, gee, I think I have all the information that I need not to go to jail," and Smith said, "Okay, I'll talk to you later," and when the case was called, it was dismissed; after Browning left the courtroom, Smith said, "I fixed up your case . . . I kept the complaining witness out of court"; as Browning said he did not have the money with him, arrangements were made for Smith to get the money later at Browning's home; later that day, Browning went to a police station and told a sergeant what happened, and that Smith was to pick up the money at five o'clock; Officer Walsh accompanied Browning home, where Browning was given a note left by Smith, with a telephone number on it; later Browning called the number and talked to defendant Smith, who said that he would be there about eight o'clock.

Browning further testified that when Smith arrived at Browning's basement apartment at about 8:15 p. m., Mrs. Browning was present, and two police officers were concealed, one in a washroom and the other in a bedroom. The doors to both of these rooms were open as Browning talked with defendant in the kitchen, "two or three feet" away. "I told him [defendant

77

Smith] to tell my wife why he was getting this money and to explain to her that I didn't offer him any money. He told me, he say, 'Well, I fixed up Paul's case and kept him from getting two or three years.' I asked him, 'What would you get out of this?' and he said, 'I had to pay the complaining witness, I kept him out of court, and I would get a little something.' . . . I told him, I said, 'Well, all I could get was $20. . . . I could write you a check for the remaining $30.' He said, 'No, I can't be bothered with no check.' So, as I was passing him the . . . two $10 bills, it was marked money, and as he was reaching, the lieutenant [Lieutenant Siedlecki] approached the kitchen. . . . he identified himself and told Officer Smith to identify himself. . . . The two $10 bills, well, I laid them on the table and I told him, 'This is all I could get.' He never did take the money. . . ."

Lieutenant Charles C. Siedlecki, in charge of the Complaint Division for the Internal Investigation Division of the Chicago Police Department, testified that he heard a conversation in the Browning apartment between Browning and "a stranger," later identified as Smith, in which Smith said, "I had to help you a lot in court today, I had to keep the owner of the license plates away from court and I had to pay the State's Attorney. . . . Otherwise you may have gotten one to two years. . . . I spent some of my own money on this case, the original deal for $50 still stands," and Browning said, "Well, I've got $20 and I can write you a check for the $30," and Smith said, "I don't want to be fooling around with a check." When he heard Browning say, "Well, take this $20 anyway," "I stepped out and confronted the gentleman I now know to be Officer Alvin Smith. . . . [On the way to the station] I asked Officer Smith how much money was involved, and he told me it was $50 involved. I asked him, 'What did you want the money for?' and he said, 'I was doing it as a favor'—I'm not sure if

he used the word 'favor' but he said he was doing it for somebody and he intimated it was somebody around the court, but he wouldn't elaborate."

Officer James Walsh, also assigned to the Internal Investigation Division, testified that he was present in the Browning apartment on November 6 and heard the conversation that took place between Browning and Smith. He corroborated in detail the testimony of Browning and Lieutenant Siedlecki.

Officer Ralph Fivelson also testified for the State that while they were driving defendant Smith to police headquarters, he heard the Lieutenant say to the defendant, "Why did you want the $50," and the defendant "mentioned that he wanted it for the—for some people in the court."

At the close of the State's case, the court made a finding of not guilty on the charge of "bribery," and the trial proceeded on the charge of "official misconduct."

Defendant testified and, in substance, denied the testimony of the witnesses for the State. He stated he went to the Browning home because Browning had informed him he would show Smith where he bought the car which bore the stolen license plates. He further said Browning offered him money, but "I told him he can't pay me nothing to do my duty, and then I turned around and started to walk out. . . ."

Initially, we consider defendant's contention that the State has failed to prove him guilty of "official misconduct." In pertinent part, the statute provides:

"A public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:
"  . . .
"(c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or

79

"(d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law."

Defendant contends that the indictment is not fully descriptive of the offense of official misconduct and omits substantial elements of that offense, including certain conditions under subsections (c) and (d) (People v. Scholl, 339 Ill App 7, 88 NE2d 681 (1949)), and "even if the language of the charges conforms to the proof, the offense charged under Illinois law is not established." People v. Begley, 270 Ill App 197 (1933); People v. Harshbarger, 304 Ill App 634, 27 NE2d 860 (1940); People v. Brown, 312 Ill 63, 143 NE 440 (1924).

▉▉ We agree with defendant that the body of an indictment must specifically state the essential elements of the crime with which a defendant is charged (People v. Sellers, 30 Ill2d 221, 223, 196 NE2d 481 (1964)), and where intent is made a part of the offense, it should be alleged in the indictment and proved on the trial. The charge, as alleged, must be an offense against the law, and if the facts alleged may all be true and yet constitute no offense, the indictment is insufficient. People v. Barnes, 314 Ill 140, 144, 145 NE 391 (1924).

▉▉ As argued by the State, however, an indictment based on a statute need not follow the exact language of the statute. (People v. Love, 310 Ill 558, 567, 142 NE 204 (1923); People v. Pronger, 48 Ill App2d 477, 481, 199 NE2d 239 (1964).) Where "the indictment charges the offense substantially in the language of the statute, the indictment is sufficient." (People v. Lloyd, 304 Ill 23, 43, 136 NE 505 (1922).) "Where the language of the information is as fully

80

descriptive of the offense as the language of the statute denouncing it, and alleges every substantial element of the offense as defined by statute, the information is sufficient." People v. Clarke, 407 Ill 353, 359, 95 NE2d 425 (1950).

After an examination of the indictment in the light of the authorities cited, we conclude that while it does not contain all the language of the statute on the subject, it "states the offense in language sufficiently explicit that the defendant may know the nature of the charge against him and the jury hearing the cause may understand it." (People v. Love, 310 Ill 558, 567, 142 NE 204.) Although the language of the indictment is taken from both subsections (c) and (d), we believe it is sufficient to charge defendant with the offense of "official misconduct" under the terms of either subsection, and "is as fully descriptive of the offense as the language of the statute denouncing it, and alleges every substantial element of the offense as defined by statute." (People v. Clarke, 407 Ill 353, 359, 95 NE2d 425.) Subsection (c) of the statute describes the crime as an "act in excess of his lawful authority." The indictment charges "an act which he knows was not authorized by law," language taken from subsection (d). The variance in language and concept between the two is not sufficient to deprive the defendant of notice of the nature of the charge against him under subsection (c). If anything, the indictment contains the additional element of knowledge, which subsection (c) does not require. We hold the indictment sufficient to charge the offense of "official misconduct" under either (c) or (d).

We next consider defendant's contention that "the verdict of the trial court is against the manifest weight of the evidence," which we consider equivalent to a contention that the evidence did not prove his guilt

of the charges set forth in the indictment beyond a reasonable doubt.

The rule to be applied here is, "where a case is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge; and, unless it can be said that the court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court below even though evidence regarding material facts is conflicting and irreconcilable." People v. Clemons, 26 Ill2d 481, 484, 187 NE2d 260 (1962).

The testimony of both Browning and the police officers, although denied by defendant, is not doubtful, improbable or unsatisfactory evidence, and if found sufficient by the trial court to sustain the charge of "official misconduct." we find no reason to substitute the judgment of this court for that of the trial court. The evidence in this case does not justify entertaining a reasonable doubt of defendant's guilt. People v. Jordan, 18 Ill2d 489, 492, 165 NE2d 296 (1960).

As to defendant's final contention that "the trial court erred in refusing to reduce defendant's sentence," we find nothing in the record to substantiate this contention. The trial judge, in considering defendant's motion for a modification of the probation conditions, gave consideration to defendant's financial status and stayed a mittimus several times, so that defendant could get someone to "run his restaurant and not lose his entire life's savings." After taking the matter under advisement, the court refused to modify the probation order. We find no abuse of discretion here. See People v. Hobbs, 56 Ill App2d 93, 205 NE2d 503.

For the reasons stated, the conviction of the defendant is affirmed.

Affirmed.

BURMAN, P. J. and KLUCZYNSKI, J., concur.