**People of the State of Illinois, Defendant in Error, v. Lawrence White, Plaintiff in Error.**

**Gen. No. 50,355.**

First District, Fourth Division.

September 22, 1965.

105

Ware Adams, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis,

Assistant State's Attorneys, of counsel), for defendant in error.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

The defendant was tried in the Criminal Division of the Circuit Court of Cook County on an indictment charging him with the crime of rape and crime against nature. He pleaded not guilty, and after a bench trial was convicted on February 18, 1959, and sentenced to the Illinois State Penitentiary for a term of 20 years. During the trial he was defended by counsel of his own choice.

On May 5, 1959, the defendant filed a written motion for a new trial on the ground of newly discovered evidence, which motion was denied on May 15, after a hearing. On November 2, 1959, the defendant filed a petition under Section 72 of the Civil Practice Act in the nature of a writ of error coram nobis. This petition was supported by affidavits. On May 2, 1960, the Criminal Court entered an order dismissing the petition. The defendant sued out a writ of error to the Supreme Court of Illinois, which writ was transferred to this court.

Mrs. Bernice Briggs testified that shortly after 5:00 a. m. on March 22, 1958, she was walking to a cab stand on the corner of 43rd Street and Vincennes, coming from her apartment at 4401 South Park Avenue in Chicago, intending to go to her mother's home before she went to work. She stated that a man (whom she identified as the defendant, Lawrence White) came around the corner, took her left arm and dragged her to the corner of the alley; that he hit her head three or four times with a bottle, then engaged in acts of deviate sexual conduct followed by sexual intercourse; and that he also took $2.00 from her purse. Mrs. Briggs testified that she had a switch blade knife in her

107

pocket, and that during the attack she stabbed the defendant "on the top of his head." She stated that the defendant then ran west on 42nd Place; that she stopped a passing automobile and the driver took her to her home, after which she took a taxi to the 48th Street police station. At the police station, about 6:00 a. m., Mrs. Briggs informed the desk sergeant that she had been raped and robbed by a "real dark, short and heavy set" man, weighing 140 or 145. She said he wore a beige coat, tan shoes, white shirt and dark pants.

Officer Kenyon Reid testified that he saw the prosecuting witness in the station at 5:50 a. m., with a deep laceration near her left eye, several bumps on her head, and in a generally "disheveled" condition. Just before talking to her he had received a call from the County Hospital Emergency Room that a man fitting Mrs. Briggs' description of her assailant was being treated for a head wound. At about 7:00 a. m. the prosecuting witness was taken to the County Hospital for an identification of the suspect. She and Reid both testified that she identified the defendant from four or five men lying in bed. She testified that when she entered the room she saw a "coffee tan" coat, tan shoes, white shirt and dark pants wrapped in a thin piece of cheesecloth; that they were the clothes worn by the defendant. Officer Reid testified that at the time she identified the suspect the defendant did not answer any questions but pretended to be asleep.

The defendant, who was 32 years of age, testified in detail as to what he did on the night in question. He stated, among other things, that he had been to a party with one Nadine Grayson; that after he left her he drove with one Quint to a Chinese restaurant on 43rd Street near Calumet and South Park. He further testified that as he was crossing Prairie Avenue at 43rd Street, somewhat before 5:00 a. m., a car drove up and

108

a man with a flash light got out and searched him; that he submitted to the search, believing that the man was a police officer; that after the search another man got out of the car with a woman he believed to be Mrs. Briggs. He stated that the two men then hit him on the head and drove off with the woman. The defendant stated that he then went home but did not report the assault to the police. He denied the rape and the deviate sexual acts testified to by Mrs. Briggs, and added that he did not at any time strike her.

The defendant's mother testified that after he came home she took him to the County Hospital. Nadine Grayson corroborated his testimony with reference to his actions up to the time he left her on the night in question.

After the defendant filed his motion for a new trial, based on newly discovered evidence, on May 15, 1959, the court held a hearing. One of the witnesses, Dolores Guinert, testified that she was a physician, a graduate of the University of Havana Medical School, and that she treated Mrs. Briggs at Provident Hospital on March 22, 1958, at 12:32 p. m., for facial injuries. She further stated that she examined her genital organs, and the examination disclosed no injury and no marks of violence. On cross-examination she stated that Mrs. Briggs could have had intercourse eight or ten hours prior to that time without any result being shown, and that she could not tell from the examination whether or not she had had intercourse.

Viola Brice testified that she was an attendant at the Cook County Hospital on March 22, 1958; that she remembered the defendant and that at the time he was brought to the hospital room there was no other patient there, but that another man was admitted later; that the defendant had a cut on his head and was treated by a physician. She also testified that she helped

109

undress the defendant and had wrapped his clothes in a cheesecloth clothes square—two shoes, two socks, a pair of pants, a "snuff colored brown" overcoat, and two pieces of underwear—and that afterwards these articles were locked in the clothes room. She also testified that after the articles of clothing were put away, two officers and a woman came into the ward and the woman said that the defendant was the man who attacked her. She stated that she smelled alcohol on the woman's breath and that she was "a little intoxicated." She also stated:

"The only way they could get these clothes was to ask us and we get a key and open the door and give them to them. The police asked to see them. We showed them to him there. He untied the clothes himself and looked at them. The woman was not present. . . ."

Ilease Nelson also testified generally to the same effect.

The court overruled the motion for a new trial on the ground that there was no showing of diligence, and that it did not place much credence in the testimony of the witnesses. Even accepting the testimony of these witnesses at face value, the court would not have erred in denying the motion for a new trial.

The petition filed November 10, 1959, under Section 72 of the Civil Practice Act, alleged among other things that a statement allegedly made by Mrs. Briggs to Walter Briggs (with whom she was living in a state of adultery) that she had been attacked at 43rd and Vincennes, was false. Attached to this petition were three affidavits which were made out by persons who allegedly attended a party with Mrs. Briggs on the morning in question; one stated that Mrs. Briggs had left at 4:00 and returned at 4:15, following the purchase of "some refreshments," and that she heard Mrs. Briggs

110

say she had been attacked by three men near 43rd and Vincennes, and that one of them had raped her. Another affiant testified that Mrs. Briggs, who had an injured and swollen eye, stated to him that she had been raped by three men at 43rd and Vincennes. The third affiant stated that he was in attendance at the party and that after the party he was assaulted by Mrs. Briggs who was armed with a knife; that in his own defense he struck and injured her, and that she was intoxicated at the time. He corroborated the testimony of the other affiants to the effect that Mrs. Briggs had made the statement that she had been raped by three men.

In the order entered in the Criminal Court on May 2, 1960, dismissing the proceedings under Section 72 of the Civil Practice Act, the court stated that it had heard the State's Attorney and counsel for the defendant and, "being fully advised in the premises," sustained the motion to dismiss. In this court the defendant lays great stress on the fact that the court erred in dismissing the petition without conducting a hearing.

 In a very recent case, People v. Lewis, 22 Ill2d 68, 174 NE2d 197, consideration was again given to a petition brought under Section 72 of the Civil Practice Act. In that case the court stated that Section 72 affords a remedy in a proper case to obtain relief from a judgment based on perjured testimony. It was further stated:

> "It does not, however, follow that mere allegations of perjury are sufficient to sustain a petition under section 72. In order to be entitled to relief, petitioner must not only show that adequate grounds for relief exist but also that it was through no fault or neglect of his own that the grounds now claimed for relief were not previously made to

111

appear to the trial court. [Citing cases.] . . . 'Such a motion or petition is not intended to relieve a party from the consequences of his own mistake or negligence. [Citing cases.]' "

Under the rule laid down in that case the trial court in the instant case could properly have dismissed the petition.* In the instant case the Criminal Court committed no error in dismissing the petition in question.

 Defendant makes a point in this court that under the evidence there was a reasonable doubt as to his guilt. The trial court, as it properly could, believed the testimony of certain witnesses and disbelieved the testimony of others. In a bench trial no citation of authority is needed to support the rule that the credibility of the witnesses is solely a question for the trial court and will not lightly be disturbed. An examination of the record indicates that there was no reasonable doubt as to the guilt of the defendant.

 The defendant also urges in this court that the sentence imposed upon him was too severe and asks that this court reduce the sentence under Section 121–9 of the new Code of Criminal Procedure. The defendant had previously been convicted of armed robbery and served a term in the penitentiary. From a reading of the record we do not believe that the sentence imposed

---

* In People v. Lewis, supra, our Supreme Court stated that "Considerable confusion exists among American cases as to the availability of relief from a judgment based on perjured testimony." We do not think the opinion in that case has eliminated the confusion since no reference is made in the opinion to People v. Touhy, 397 Ill 19, 72 NE2d 827, cert den 68 S Ct 99, and rehearing den 68 S Ct 205, in which case the court stated that the common law writ of error coram nobis or its statutory substitute is not "available as a remedy for newly discovered evidence or for alleged perjured testimony." In Hall v. People, 402 Ill 478, 84 NE2d 418, cert den 69 S Ct 1510, it is flatly stated that the writ does not lie to correct false testimony.

by the trial judge was too severe. People v. Hobbs, 56 Ill App2d 93, at page 99, 205 NE2d 503.

The judgment of the Criminal Court of Cook County is affirmed.

Affirmed.

ENGLISH and DRUCKER, JJ., concur.