**People of the State of Illinois, Plaintiff-Appellee, v. Peter Najera (Impleaded), Defendant-Appellant.**

Gen. No. 50,047.

First District, Third Division.

September 22, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Thomas Burnham, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

In a nonjury trial defendant was found guilty of robbery and sentenced to one to five years in prison. On appeal he raises two points: (1) that the story of the complaining witness is incredible, thus raising a reasonable doubt as to the defendant's guilt, and (2) that the trial court should have examined the State's file to determine whether it contained impeaching statements alleged to have been given by the complainant to the police.

At approximately 4:00 a. m. on August 11, 1963, Peter Najera and his uncle, Raul Rodriguez, entered a restaurant at 92nd Street and Commercial Avenue in Chicago. They had been drinking and, according to their testimony,

had decided to have a bowl of chili before going home and had gone to the restaurant for that purpose. The complaining witness, James Gountanis, an employee in the restaurant, testified that there were from three to five people in the restaurant. The defense estimated there were between fifteen and twenty. After Najera and his uncle had been served, Gountanis presented them with a bill for $1.04 (two bowls of chili, one cup of coffee and four cents sales tax). Najera gave him a $1 bill, which Gountanis took to the cash register at the end of the counter and rang up. According to Gountanis, Najera at that time approached him and asked, "Do I owe you anything else?" to which Gountanis replied, "Four cents. If you haven't got it, it is all right." Najera then offered Gountanis a quarter with his left hand, drew out a pistol with his right hand and said, "Open it up [meaning the cash register] and give me all the money." Gountanis told Najera there was no money in the register, and Najera replied, "Give me my dollar." The complaining witness handed over the $1 which Najera took and ran from the restaurant. After hesitating a few seconds, Gountanis went to the door and saw Najera enter a white car and drive away. Ten or fifteen minutes after the incident, a police officer entered the restaurant for a cup of coffee and Gountanis told him of the robbery. The officer, whose identity was not established, asked Gountanis if he wished to file a complaint. The officer then took down the description of the defendant and his uncle and left. Up to that time Gountanis had informed a waitress in the restaurant of the holdup, but had done nothing to arouse or inform the patrons.

The police found and arrested Najera and Rodriguez at about 5:25 a. m. the same morning. At the scene of the arrest the officers found a revolver which was subsequently identified as the one used by Najera at the restaurant. Gountanis was brought to the station

at about 7:25 a. m. and there identified Najera and Rodriguez.

According to Najera, he gave Gountanis a $2 bill and there was an argument over the change, Najera contending that Gountanis was trying to charge him for food ordered by several other customers; that he walked out without his change and met his uncle Raul and a longtime friend, one Candido Mendoza, and that the three of them proceeded to a tavern next door to the restaurant where they resumed drinking. He consistently denied threatening Gountanis and denied possession of a revolver. Rodriguez corroborated defendant's story and testified that he did not see Najera pull out a pistol.

Mendoza, a friend of the defendant's for ten years or so, testified that he was in the restaurant when the argument took place and that there were quite a few people in the restaurant (at least a dozen). Mendoza said he observed the argument but did not see defendant draw a pistol. On cross-examination Mendoza said, "Well, he was waving his hand, bring up his hands. I didn't see nothing in his hands." After the argument, Najera walked out of the restaurant and Mendoza walked out right behind him. Outside they met Rodriguez, adjourned to a tavern next door and drank some beer. Mendoza further testified that after drinking in the Central Tavern for about half an hour, they left together and he took a bus home.

Ned Tarver, a Chicago police officer, testified that he arrested the defendant and his uncle in the vicinity of 92nd Street and Burley Avenue and that at that place he found the revolver which was later identified by Gountanis as the weapon used in the alleged robbery.

There is nothing contradictory or conflicting in the testimony of Gountanis and the arresting officer. On the contrary, the finding of the gun corroborates Gountanis' testimony on that important aspect of the case. Nor are the events described by the complaining

witness inconsistent with human experience when we consider that they occurred at 4:00 a. m. after a night spent by defendant in drinking. The fact that the robbery yielded only one dollar, while lending a bizarre atmosphere to the case, does not reflect unfavorably upon the credibility of the complaining witness. Indeed, if Gountanis had decided to concoct a story of robbery, he would not have made the proceeds $1. While defendant's behavior may have the aspect of drunken recklessness, the possibility of tragedy under such circumstances is too grave to be overlooked.

 The credibility of witnesses is solely a question for the trial court and will not lightly be disturbed. People v. White, 63 Ill App2d 105, 112, 211 NE2d 9; People v. Palumbo, 5 Ill2d 409, 125 NE2d 518; People v. Griffin, 48 Ill App2d 148, 198 NE2d 115. When conflicting evidence is presented, it is within the province of the trier of fact to decide which story is to be believed and whether the evidence offered by the State is credible, unconflicting and not inconsistent with human experience. A court of review will not substitute its judgment for that of the trial court. People v. Tensley, 3 Ill2d 615, 122 NE2d 155; People v. Kirilenko, 1 Ill2d 90, 115 NE2d 297. The evidence was adequate to support the finding of guilty beyond a reasonable doubt.

██ ██ The second point raised by defendant is that the trial court erred by not conducting an investigation of the State's file in order to determine whether a statement by Gountanis existed and whether such statement was in the possession of the State's Attorney. The prosecution is required to furnish on demand to defendant for impeachment purposes specific statements in its possession made by a State's witness which have been established to exist and which are in the witness' own words or substantially verbatim. People v. Neiman, 30 Ill2d 393, 397, 197 NE2d 8; People v. Wright, 30 Ill2d 519, 198 NE2d 316; People v. Moses, 11 Ill2d 84, 142

NE2d 1. In the instant case, defense counsel contended that Gountanis had made a statement to one of the police officers, and counsel asked the Assistant State's Attorney to tender the alleged document. The State denied knowledge of any such statement and offered its file to the defense. The prosecutor even recalled Gountanis to the stand in an attempt to determine whether the witness had signed a statement or whether he was mistakenly referring to the complaint. The court thought the witness might have been confused and that what was referred to as a "statement" was the complaint. Counsel for defendant did not pursue the point by requesting the court to examine the State's file.

Defendant relies on People v. Wright, 30 Ill2d 519, 198 NE2d 316, for the proposition that the trial court should have inspected the State's file on its own motion, and defendant urges us to remand the cause so that a search for the alleged documents may be conducted. In the Wright case it was undisputed that a statement signed by a witness did at one time exist and was at one time in the possession of the State. The court, in a very limited ruling, ordered the cause remanded strictly for the purpose of searching for the missing document.

The holding of the Wright case is further discussed in People v. Marshall, 74 Ill App2d 472, in which this court decided that the trial court was not required to determine the whereabouts of certain longhand notes made by a police officer pursuant to an interview with a witness for the prosecution. The notes in question were transcribed for the police file and at the time of the trial it was not known where the original notes were. The typed document was tendered to the defense, but defense counsel insisted that the trial court was obliged to conduct a search for the longhand notes. We dismissed that contention, holding that, absent a re-

quest from defense counsel, the trial court was not required to examine the State's file nor was the trial court obliged to compel the police to produce the statement or explain its absence.

In the instant case the State denied knowledge of any statement, offered its file to defendant and extended its examination of the complaining witness in order to find out whether a statement existed. There is no indication in the record that the witness or the prosecution had access to any statement or that defendant's right to cross-examine was impaired.

Judgment affirmed.

SULLIVAN, P. J. and DEMPSEY, J., concur.