People of the State of Illinois, Appellee, v. Alvin Garrett, Appellant.

Gen. No. 51,380.

First District, Fourth Division.

April 14, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Truman Larrey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

CHARGE: Robbery.[1]

[1] Ill Rev Stats 1963, c 38, § 18–1(a). A person commits robbery when he takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

DEFENSE AT TRIAL: Defendant was not proved guilty beyond a reasonable doubt.

JUDGMENT: After a bench trial, the court found the defendant guilty and imposed a sentence of one to four years.

POINT RAISED ON APPEAL: Defendant was not proved guilty beyond a reasonable doubt.

EVIDENCE: The complaining witness, Woodrow Flient, testified that he lived at 2430 South State Street with his wife and family; that on the night of February 27, 1965, he had been visiting his aunt who lived at 13255 South Evans, where he had stayed four or five hours; that while he was there he had nothing to eat or drink; and that he had gone there to pay her rent. He stated that he left about 1:00 a. m. (February 28), and drove to the Cut Rate Liquor Store located at 31st and Indiana Avenue, where he bought two bottles of beer, a half pint of Johnny Walker whiskey and some pop; that the items were put into two bags. He testified that he had not had a drink; that he started walking to his car which was parked nearby on 31st Street, when he felt someone touching his pocket; that he turned to his left and was struck in the face by a man who had been following him. He testified that he could not see very well what the man had in his hand; that it looked like a stick (on cross-examination he said he could not see it) ; that he was struck a second blow and fell down, letting the packages drop; that as he lay there the defendant went through Flient's pockets and took ten or twelve dollars, the keys to his car, and a pair of glasses. He stated that he then saw two other men with the defendant.

The witness further testified that when the police came he told them what had happened. He said that he described the three men and "identified one." At the trial he described the defendant as a dark-skinned Negro,

(b) Penalty. A person convicted of robbery shall be imprisoned in the penitentiary from one to 20 years.

194

about 5'8" or 5'9", weighing about 169 pounds, wearing dark pants, and something like a sweater with an emblem on it over his shirt, and a dark jacket. Flient then described the other two men in great detail. He further testified that the defendant had a scar about an inch long on the side of his face.

Flient said he did not tell the police that he could not describe two of the three men, and on cross-examination the following took place:

Q. And if the police said that you told them that the man had taken a half a pint of Johnny Walker whiskey from you, that would be incorrect; . . .

A. That would be incorrect, because everything—

Q. You didn't tell the police that they took a half a pint of Johnny Walker whiskey from you, did you?

A. No, I did not. Could I tell what happened?

Q. That's all I want to know.

On direct examination the witness testified that when he was struck he fell and dropped the bottles of beer, the half pint of whiskey, and the six bottles of Coca Cola. He stated, "They took my belongings." It is apparent from his testimony that he never saw the bottles again.

Flient further testified that he had not said one of the three men wore a gray-checked sport jacket; that he did not tell the police that one of the men had a scar; and that he next saw the defendant the following day in the same vicinity. He stated that he was never at a hotel located at 3116 Indiana on the 25th of February 1965, nor any other day, and that he did not have a fight with the defendant on that date. He stated that he had never heard of the Corporate Liquor Store, nor did he tell the police he had been to the Corporate Liquor Store; that if the report so indicated it would be incorrect. He further testified he told the police that one of the men had a gun.

195

Ralph Anton, a police officer, testified that on February 28, 1965, while in the company of two other policemen—one of whom was Robert Johannes—he talked with the defendant, who denied committing the robbery; that on March 1, at about 1:30 a. m., he had a further conversation with the defendant, at which time Flient was present. Officer Anton testified that the defendant said he had struck Flient, but denied taking any part in the robbery, denied taking any money; that the defendant said there were two other men there and that possibly they "took this." Officer Anton said he did not make out a report, but his partner, Johannes, did, and that he had the report with him. This report does not appear in the record.

The defendant, Alvin Garrett, testified that he lived at 3116 Indiana Avenue; that on February 25, between 6:00 and 7:30 p. m., Woodrow Flient came to his room on the second floor and asked for some person who was supposed to be living on the same floor; that Garrett told him the people he asked about did not live on that floor. According to Garrett's testimony, Flient was intoxicated at the time; he started cursing loudly; Garrett told him to cut it out, and when he continued cursing, Garrett hit him. Garrett testified that he took no money from Flient's person at that time, nor any property from Flient; nor did he then try to take any money or property from Flient. He stated that he did not strike Flient on the evening of February 27 or the early morning hours of February 28, 1965, nor did he take any money or property from him at that time; that he told the police he had hit Flient; that there were two other men who might have robbed Flient, and gave the police their names; that when he told the police he had hit Flient he was referring to February 25. He said that one of the men—Earl Hawkins —came to his room and gave him a jacket which was gray with black stripes in it; that it was the jacket Flient said Garrett was wearing at the time of the robbery. He fur-

ther testified that he does not have a scar on his face, but above his left eye there is an enlarged vein which protrudes.

At the close of Garrett's testimony his counsel offered Defendant's Exhibit 1 (a police report based on information from Flient), which was admitted in evidence. Among other things the report stated that it referred to the alleged robbery of Woodrow Flient on February 28, 1965; that Flient had been drinking at the time; that $15 in money was taken from him; that three men were involved with the robbery, and that the men displayed weapons—a knife and a pipe. The report further stated that Flient described only one of the three male Negroes who were involved in the alleged robbery, that one being described as 27 to 35 years old, 5'9" or 5'10" in height, 190 to 200 pounds in weight, stockily built, wearing a gray-checked sport jacket and no hat. The report further set out that Flient stated one of the men had taken a half pint of Johnny Walker whiskey from him, together with his wallet containing "$15.00 USC and driver's license." The report stated: "Offender had a lead pipe with which he hit victim on head causing a laceration of eye of victim."

█ OPINION: It is, of course, the law that in a criminal case the People must prove beyond a reasonable doubt not only the commission of a crime alleged but also its perpetration by the accused. People v. Ashley, 18 Ill2d 272, 164 NE2d 70; People v. Davis, 14 Ill2d 196, 151 NE2d 308.

In the case before us the defendant strongly argues that the testimony of Flient was impeached by the copy of the report which it is admitted was made to a police officer. Flient stated on the stand that the defendant testified he had told the police that one man had a gun. This does not appear in the report. On the stand Flient testified he did not see what he was hit with; that it looked like a stick, while in the report he allegedly stated

197

he was hit with a lead pipe. There was a variance between his testimony and the report with reference to the amount of money which was taken ($12.00 and $15.00) ; and the report indicated he had been drinking, while he testified on the stand that he had nothing to drink during the evening. The testimony concerning the defendant's height and weight varies from the report, but not to any material extent. While testifying Flient said the defendant, at the time of the alleged assault and robbery, was wearing a sweater with an emblem; nothing to this effect appears in the police report. Flient's testimony on the stand was that the defendant was wearing a dark jacket, and that no one at the time of the occurrence had a gray-checked sport coat; that if that appeared in the police report (which it did) it was incorrect. On the stand Flient testified that the defendant had a one-inch scar on the side of his face; the police report gives no information concerning a scar. Flient testified on the stand as to complete descriptions of the appearance and dress of the two other men he said were with the defendant at the time of the occurrence, and said he had given these descriptions to the police, but the police report states "no description on #2 and #3 male Negroes."

The State argues that before a witness may be impeached by his prior statements, a proper foundation must be laid in order to alert the witness, avoid unfair surprise, and to give the witness an opportunity to explain. People v. Moses, 11 Ill2d 84, 142 NE2d 1. The State also urges that no proper foundation was laid for the introduction of the police report. The report which was introduced in evidence bears the names of W. Brown and S. Martin as reporting officers. The only reference to Defendant's Exhibit 1 appearing in the abstract is as follows:

> "Defendant's Exhibit No. 1 marked for identification. Defendant's Exhibit No. 1, which purports to

be a report made by Officer W. Brown, Star 4493, received in evidence—"

██ ██ In his reply brief the defendant argues that the State waived any objections it might have to the report since at the time it was offered the State's Attorney made no objections to the introduction of the report in evidence. That is not apparent from the abstract, and a reviewing court is not required to go to the record in order to reverse a case. Under the rule laid down in Moses, a proper foundation was not laid for the introduction of the police report, and it was improperly admitted in evidence. Consequently, the report is not properly before us on this appeal, and even though it was before the trial court, it is apparent that the trial court believed the evidence of Flient in spite of the alleged impeachment.

The defendant's testimony with reference to the two men is not persuading. Garrett testified that after he was arrested he told the police that he had hit Flient and he also told them "about two other possible persons who might have at one time robbed Mr. Flient." His testimony was:

> "After they told me I were booked for robbery, so I didn't want them to put the robbery on me, so I said I believe I know the two fellows they were looking for . . . One of the boys named Earl, he came up to my room one morning, woke me up. And he bought a jacket the day before that, and I asked him what happened to his right hand jacket pocket, and the guy say he stuck a knife in the pocket. And he give it to me."

Officer Anton had already testified that Garrett had told him that when he hit Flient, two other men were there and that possibly they committed the robbery; this in the face of Garrett's testimony that the only time he

had any contact with Flient was the night of February 25 in the building in which Garrett lived.

█ Garrett further testified that he told the police that the other man was named James Austin. The testimony of the defendant that he had a quarrel with Flient and that the two other men might have been engaged in the robbery was, as the defendant himself stated, an attempt to get out of the robbery charge. In spite of the attempt of the defendant to exonerate himself, we believe the testimony of Flient was sufficient to establish the guilt of the defendant beyond a reasonable doubt. It is the rule that where the only question is one of identification, which would appear to be the fact in the case before us, the testimony of one credible witness, if positive, is sufficient to convict, even though contradicted by the accused. People v. McCall, 29 Ill2d 292, 194 NE2d 222.

█ █ Where a case is tried by the court without a jury, the determination of the credibility of witnesses and the weight to be accorded their testimony is committed to the trial judge, and unless the judgment is found to rest on doubtful, improbable or unsatisfactory evidence or clearly insufficient evidence, a reviewing court will not substitute its judgment for that of the court below. People v. Spencer, 81 Ill App2d 344, 225 NE2d 407, citing People v. Clemons, 26 Ill2d 481, 187 NE2d 260; People v. Smith, 57 Ill App2d 74, 206 NE2d 463.

In People v. Williams, 12 Ill2d 80, 145 NE2d 29, the Supreme Court points out that "The trial judge, as trier of the facts, has many advantages in determining the credibility of witnesses."

█ In the case before us, even had the police report been properly admitted and considered by the court, nevertheless the trial judge in determining the credibility of the witness, was not at liberty to disregard the testimony of a witness merely because evidence tending to impeach had been introduced, nor on the ground that the

witness had made an erroneous statement. It is only where he has been successfully impeached and where the statements are willfully and corruptly false in regard to material facts that the trier of fact is authorized to disregard the entire testimony. Beedle v. The People, 204 Ill 197, 68 NE 434.

■ There was no question that in the case before us the corpus delicti was proved; the only question was the identification of the defendant as one of the robbers. When we consider the entire record it is clear that the guilt of the defendant was proved beyond a reasonable doubt.

DECISION: The judgment of the Circuit Court is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.