People of the State of Illinois, Plaintiff-Appellee, v. Buster Brown, Junior, Defendant-Appellant.

Gen. No. 52,180.

First District, First Division.

November 25, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Harold A. Cowen, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Defendant, Buster Brown, Junior, together with Dean Mulligan, George Morin and Robert Rouse, was indicted for armed robbery. Later, a severance for Mulligan was ordered. At the beginning of a bench trial for the remaining three, the charges against Morin were nolle prossed, and he later testified for the State. The trial proceeded as to defendants Brown and Rouse, and at the end of the State's case the trial court found Rouse not guilty. Brown's sister then testified in his defense as an alibi witness. Brown was found guilty as charged, and he was sentenced to the penitentiary for seven to twelve years.

On appeal, Brown contends that (1) he was not proved guilty beyond a reasonable doubt; (2) he was improperly convicted on the uncorroborated testimony of an accomplice; and (3) error was committed in the admission of an in-court identification which was tainted by a previous showup.

On January 31, 1966, at about 9:45 p. m., James Jergens and his sister Anna were watching television in their home at 3244 South May Street in Chicago. The front doorbell rang and when Jergens opened the door, he saw a Negro boy and a white man standing on the front porch, which was illuminated by an overhead light that Jergens had turned on earlier in the evening. One of the men handed Jergens a package, and the two men

walked in. The Negro had a shotgun and said, "This is a holdup." Anna Jergens went to the hall closet and turned over $300 which she kept there. At gunpoint, Jergens and his sister were herded into the kitchen, where they were tied up and left on the floor. The two men spent some time ransacking the house and left with two cans which contained money. In court, Jergens identified defendant Brown as the man who had entered his home with the shotgun and robbed him, and stated that $900 of his money was taken.

George Morin testified for the State. On January 31, 1966, at 6:00 p. m., he met Dean Mulligan. Mulligan made up an empty parcel wrapped for delivery, and they drove to Mulligan's house where he picked up a shotgun. They then went to a tavern where they picked up Robert Rouse and defendant Brown. As the four drove to the vicinity of 31st and May Streets, they made plans for the robbery of the Jergens' home, about which Morin was informed. It was decided that Mulligan and Brown would go to the front door and, after gaining entry, they would let Rouse in at the rear door. Mulligan would carry the "dummy" package, and Brown would carry the sawed-off shotgun. Upon arrival, Brown and Mulligan went to the front door while Rouse went into the alley in the rear. Morin remained in the car and did not see Brown or Mulligan enter or leave the Jergens' house. A few minutes later Rouse returned to the car and stated that he was unable to gain entrance at the rear door. He and Morin waited in the car until Brown and Mulligan returned with two containers, in which $900 was found later and divided among the four men.

On cross-examination, Morin stated that he was arrested on March 22, 1966, in connection with an armed robbery in which he had participated on March 21. He told the police that he had no knowledge of the Jergens robbery. The police then told him they knew about it and, after a brief confinement in the same cell with Mulligan,

he made an oral statement to the police, in which he admitted the January robbery and named Brown, Rouse and Mulligan. He had a conversation with an Assistant State's Attorney, who said he would help him with the court. No promises were made to him, and he did not know until a month before the trial that the charges against him were to be nolle prossed.

Brown's sister testified in his behalf that on the night of January 31, 1966, she and her brother had been drinking together in a tavern, and that he was not out of her sight until almost midnight and could not have committed the offense charged against him.

Initially considered is defendant's contention that he has not been proved guilty beyond a reasonable doubt. Defendant argues that his identification by James Jergens should have been rejected because of Jergens' poor eyesight, old age and emotions. It is argued that these factors and the swift course of events which permitted only two or three glances at the Negro robber, who was jumping from room to room, resulted in a vague description of the Negro robber.

Defendant Brown also asserts that the in-court identification by Jergens was tainted by an earlier identification made long before the trial and a month and a half after the robbery. This is based on the cross-examination of Jergens, who testified that he pointed Brown out to the police in a corridor in the Criminal Court Building, and that he never saw Brown in a lineup. He also said that he was in the living room with Brown and Mulligan approximately fourteen minutes.

On this point, defendant argues that Jergens testified he could not tell the ages of Negroes, and "it is doubtful if he could tell one Negro male from another." Defendant contends that the in-court identification was a foregone conclusion, since Jergens would not have contradicted his previous identification, and by this time "he knew defendant well both by sight and by name, from

previous appearances in court. It was meaningless, therefore, that this time defendant was near several other Negro men."

Brown also maintains that the not guilty verdict for Rouse argues for a reasonable doubt of the guilt of Brown because the Jergens identification of Brown was not a sufficient basis for conviction.

Defendant's authorities in support of the contention that the in-court identification by Jergens should have been rejected or treated as insufficient corroboration include Stovall v. Denno, 388 US 293 (1967), and United States v. Wade, 388 US 218 (1967). Also, People v. Gardner, 35 Ill2d 564, 572, 221 NE2d 232 (1966), where the court reversed a conviction because of failure to hold a proper lineup plus an alibi. Also, People v. Ikerd, 26 Ill2d 573, 188 NE2d 12 (1963), and People v. Cullotta, 32 Ill2d 502, 207 NE2d 444 (1965), where it was held that an identification cannot be sustained if it is vague and uncertain. Defendant states, "Because of the vagueness of Jergens' observations, his poor opportunity to observe, and his physical handicaps, these cases are applicable herein."

██ We find no merit in the contention that the in-court identification by Jergens should be rejected. The record does not demonstrate that the in-court identification was not of independent origin or that it depended upon the corridor identification. In People v. Gardner, 35 Ill2d 564, 221 NE2d 232, it is said (p 572):

> "Although it is not necessary in every case to use a 'lineup' to make identification testimony admissible, . . . the fact that one was not used affects the weight of the identification."

██ Defendant Brown next contends that the testimony of the accomplice, Morin, should have been rejected because of the power which the State held over him and because he was a confessed perjurer. Defendant asserts

that Morin was induced to testify by the knowledge that the reward he was to be given for so doing could be taken away.

Brown's authorities on the point that the testimony of an accomplice requires material, nonpartial corroboration include People v. Johnston, 382 Ill 233, 46 NE2d 967 (1943), at page 239:

> "It is true that this court has held that where the testimony of an accomplice lacks material corroboration, or where it is discredited, or where it appears to be actuated by a desire to avoid punishment, it is not sufficient upon which to sustain a verdict and judgment of conviction."

Both the victim, Jergens, and the accomplice, Morin, were subjected to extensive cross-examination. If there was any weakness in the testimony of Jergens because of his age and physical handicaps the court was made fully aware of it. As to the accomplice, Morin, the court was also fully informed as to his background and the fact that the indictment against him had been nollied because of his agreement to testify for the State.

Defendant Brown next contends that an inference adverse to the State's case should be drawn from the failure to call Anna Jergens to bolster up her brother's identification of the defendant. Defendant cites in support People v. DiVito, 66 Ill App2d 282, 214 NE2d 320 (1966), where it is said (p 286):

> "The inference might well be that Orlach had seen the robbers and would have testified that the defendant was not one of them."

In People v. Strong, 21 Ill2d 320, 325, 172 NE2d 765 (1961), it is said:

> "While the State was not obligated to call Reynolds, . . . the unexplained failure to do so may give rise to an inference against the State."

388

On this point the State asserts that it is not required in a criminal prosecution to call all of the witnesses who might be called to testify in the matter, and ordinarily the failure of the prosecution to call a particular witness raises no presumption that, if called, the witness would have testified adversely to the People's case. Citations include People v. Williamson, 78 Ill App2d 90, 96, 223 NE 2d 453 (1966):

> "When a case turns upon a disputed issue of fact which an available witness could resolve from his unique knowledge of the event and the State chooses not to call that witness to testify, then the trier of fact may infer that the testimony would have been unfavorable to the State."

The State argues that Jergens positively identified Brown as the robber whom he had seen in his home, and that his sister Anna had no unique knowledge on any disputed point, therefore her testimony would have been cumulative and repetitious and no adverse inference can be drawn against the prosecution for not calling her to testify.

As to the failure to call Anna Jergens, we believe the rule to be applied here is "the State is not obligated to produce every witness to a crime and the failure to produce a witness does not give rise to a presumption that the testimony of that witness would be unfavorable to the prosecution." People v. Jones, 30 Ill2d 186, 190, 195 NE2d 698 (1964).

After examining the authorities offered by both sides, we have concluded in this case that it was the function of the trial court, as the trier of fact, to determine the credibility of the victim, Jergens, and the accomplice, Morin, and the weight to be accorded their testimony, and unless that judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, this court, as a reviewing court, will not

substitute its judgment for that of the trial court. People v. Garrett, 82 Ill App2d 192, 200, 226 NE2d 429 (1967).

██ From an analysis of the entire record, particularly the evidence relating to identification, it is our conclusion that the proof was sufficient to satisfactorily establish defendant's guilt beyond a reasonable doubt. All of the alleged reasons for rejecting the identification testimony of the victim, Jergens, and the accomplice, Morin, were argued at length before the trial judge. Therefore, we will not substitute our judgment for that of the court below.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.