People of the State of Illinois, Plaintiff-Appellee, v.
William James, Defendant-Appellant.

Gen. No. 52,334.

First District, Third Division.

April 10, 1969.

 

Gerald W. Getty, Public Defender of Cook County, of Chicago (John E. Hughes and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

Defendant appeals from a judgment in a bench trial finding him guilty of the crime of robbery. He was sentenced to the Illiniois State Penitentiary for no less than two nor more than five years.

Two points are raised by the defendant. As to the first point, he argues that it was error to permit a police officer to testify over objection to the victim's identification of the defendant in the police station. Under his second point, the defendant argues that he was not proven guilty beyond a reasonable doubt.

Defendant-appellant, William James, was jointly indicted with Calvin Wyche on charges of robbing one Oliver Morey.

The evidence on behalf of the people showed that the victim, Oliver Morey, was employed as a doorman at 880 Lake Shore Drive in Chicago. On the evening of November 10, 1965, Mr. Morey was working and shortly before 8:00 p. m., he went to eat at a grill located at the corner of Erie and Clark Streets. While in the grill, his attention was directed to the defendant William James, who was engaged in a lengthy argument with the proprietor concerning his bill. Defendant James was in the grill until Mr. Morey finished his meal and James left the grill immediately before Mr. Morey left. Mr. Morey saw James cross the street and join another man, both of whom walked east along Erie Street. Mr. Morey testified that he proceeded east on the opposite side of Erie Street and, as he reached an intersecting alley, the two men ran across Erie Street to him. The man who was with the defendant James grabbed Mr. Morey around the neck and threw him to the pavement. After he was thrown to the pavement, the victim was on his back and was facing upward. He also saw and recognized the defendant at that time as the defendant was standing by his head. At the time of the holdup, he had $38 in his pocket. The defendant's companion was Calvin Wyche. Wyche proceeded to search the victim's lower pockets and also took his wristwatch, while the defendant James went through the pockets of Mr. Morey's uniform jacket. Both men then turned and fled down the alley.

While the robbery was in progress, two Chicago police officers who were cruising on North Clark Street in a squad car noted what appeared to them to be a scuffle at the mouth of the alley just east of Erie Street and saw two men running north from the mouth of the alley. The squad car was traveling north on Clark Street and

was only about fifty feet away from the mouth of the alley where the scuffle was taking place. The squad car then proceeded toward Huron and blocked off the alley-way where the defendant James was apprehended with Wyche. At that time, Wyche took off a watch and threw it over the squad car. A search was made of the men and nothing was found on James, the defendant. Both men were taken to the 18th District Police Station where the victim was waiting. The victim then pointed to both men and said something about a watch, later identifying the watch as being his. The victim had gone directly to the police station after the occurrence and arrived at the station within ten minutes.

The defendant testified that he had dinner at the Erie Grill and that when he finished, he started talking to Kenny, a man who worked there, for ten or fifteen minutes or longer. After leaving the grill, the defendant testified that he noticed there was a scuffle and he started toward the alley walking as fast as he could. The defendant testified that upon reaching the alley and seeing the scuffle, he started to run through the alley to get to his home, the back of which could be reached from the alley. He further testified that after he started running, he heard footsteps behind him and he ran to the next intersection and there the squad car had pulled up on the street at the end of the alley. The policemen then apprehended the defendant and Wyche. The defendant stated that it was possible that he could have seen Wyche prior to that evening but that he did not know him nor did he know where Wyche lived. The defendant stated that a watch was thrown near him while one of the officers was talking to Wyche.

■ ■ The defendant's first contention is that it was error to permit a police officer to testify over objection to the identification of the defendant by the victim in the police station. As heretofore mentioned, the victim was in the police station at the time the defendant

and Wyche were brought in by the police. Officer Rothas testified that at the police station the victim identified the defendant and Wyche and the victim's watch. Officer Rothas in response to a question on direct examination said: "When we brought him (James) in, Mr. Morey pointed to both defendants and said . . . ." Defendant objected to this testimony as hearsay. The court then said that the witness could testify as to what he saw the witness do in the police station. Officer Rothas then proceeded to testify that he had held up the watch and Mr. Morey stated that was his watch. The testimony of Officer Rothas as to what Mr. Morey did by way of identifying James and what Morey said in identifying the watch was error (People v. Smith, 105 Ill App2d 8, 245 NE2d 23; People v. Reeves, 360 Ill 55, 195 NE 443, and People v. Wright, 65 Ill App2d 23, 212 NE2d 126). That evidence was, however, not harmful to the defendant because, in the instant case, the victim testified that he saw his watch, at the police station and that the police officers who arrested the defendant brought the watch in at the same time the defendant was brought in. His testimony on the witness stand as to the identification of James was positive and convincing. The victim also testified that he arrived at the police station about five or ten minutes after the holdup and that the defendant was brought into the police station about fifteen or twenty minutes after the victim arrived. Apparently the victim went directly to the police station after the robbery and did not know that the defendant had been arrested. Mr. Morey testified that when the defendant was brought into the police station by the police officers, he saw him. The victim had observed the defendant for approximately 20 minutes in the restaurant before the holdup and also observed him running across the street prior to the robbery, and while lying on his back on the ground he saw

the defendant standing above him while the defendant was going through his pockets.

In People v. Reeves, 360 Ill 55, 195 NE 443, a police officer was permitted to testify as to what the janitor of the building entered by the defendants said and did at the time of the showup at the Detective Bureau. The case involved an indictment for forcibly breaking and entering an office of a corporation with intent to commit larceny. While the court found that it was error to permit the officer to testify to the statements made and to the things done by the janitor by way of identification of the defendant, and that it was further amplified when the Assistant State's Attorney referred to the evidence in his argument to the jury, nevertheless the court in that case refused to reverse on the ground that the competent evidence so overwhelmingly and thoroughly proved the defendant guilty beyond a reasonable doubt, that the jury could not conscientiously have arrived at any other verdict.

This court in People v. Smith, 105 Ill App2d 8, 245 NE2d 23, held that under the circumstances of that case, a police officer's testimony that the robbery victim picked the defendant from a lineup was incompetent hearsay testimony but that it was not prejudicial to the defendant. In Smith, as in the case at bar, the victim also testified that she had identified the defendant at the police station, and this testimony was uncontradicted. This court stated that the incompetent testimony was not prejudicial since the police officer's testimony "did not inject new evidence into the trial; it merely repeated what had already been proven by competent and undisputed testimony. People v. Sterling, 341 Ill 112, 173 NE 139 (1930)." Likewise, we are of the opinion that the errors relating to the identification testimony of Officer Rothas were harmless.

██ ██ We will now proceed to discuss the next point raised by the defendant, namely whether the evidence presented at the trial was sufficient to support his robbery conviction beyond a reasonable doubt. The defendant argues that the showup of the defendant occurred while the defendant was unrepresented by counsel and that no attorney was present to protect the defendant from the basic unfairness to him that occurred there. The defendant in support of his argument cites United States v. Wade, 388 US 218 and Gilbert v. California, 388 US 263. Neither of these decisions indicate that a lineup must be held. They hold that when a lineup is held, the accused has a right to have counsel present. Neither Gilbert, supra, nor Wade, supra, is in point since those decisions are not retroactive and can have no application to the present case. In Stovall v. Denno, 388 US 293, the court held that these decisions had application only to identifications made after their date of decision, June 12, 1967. The identification here was made on the evening of November 10, 1965. There is no legal requirement that a suspect must be placed in a lineup in order that his identification by a witness may be considered proper. (People v. Boney, 28 Ill2d 505, 192 NE2d 920.) The question here is whether under all of the facts and circumstances of this case, the identification procedure employed was so unnecessarily suggestive and conducive to mistaken identification that the defendant was denied due process of law. On cross-examination of the victim, the following question was asked and answer given:

"Q. And the police told you that this was the man who robbed you?
"A. No, the police didn't tell me. I knew it myself, who robbed me. . . ."

There is no indication that anybody suggested to the victim that the defendant was one of the men who robbed him.

In People v. McIntosh, 82 Ill App2d 90, 227 NE2d 76, a suspect was identified without a lineup after the police had called the complaining witness and requested him to view someone whom they had in custody and who fit the description given by the witness. The defendant in that case argued that this procedure was so suggestive that it was violative of his rights. The court, at page 94, said the following:

> "The factors influencing Mason's identification are said to be the telephone call he received from the police that they had a suspect in custody who fitted the description he had given and his not viewing the defendant in a line-up. Any time the victim of a crime is asked to come to a police station to look over persons arrested, there is an unavoidable intimation that the police have arrested someone who they believe might be the perpetrator of the crime. The fact that there was no line-up does not fatally weaken the evidence of identification but bears only on the weight to be accorded that evidence . . . There is nothing in the record which would suggest that Mason was influenced or was susceptible to influence."

In the instant case, no one told the victim that the police had someone in custody nor did anybody request him to identify the defendant to determine whether he was the robber. In the instant case the victim was already in the police station when the defendant was brought in and he recognized the defendant at that time.

■ The trial judge in this case determined in the exercise of his sound judicial discretion, the weight of

the credibility to be given to each of the witnesses who testified. (People v. Williams, 12 Ill2d 80, 145 NE2d 29.) The court prior to pronouncing sentence said:

"I think the testimony of the complaining witness, Mr. Morey, I think was very accurate and very convincing. There were minor divergences in the testimony of Officer Rothas and other testimony by the complaining witness as to the south or north side of Erie, but this I consider very immaterial. The substance of the testimony of the two, I think, was very convincing. I think Mr. James' testimony did credit to his imagination and his flexibility of thinking. It contains a degree of improbability, and I cannot find any reasonable doubt."

■ ■ From reading the record in this case, we agree with the summation made by the trial judge and it appears to us that the evidence was amply sufficient to support a finding of guilty beyond a reasonable doubt. Since this was a bench trial, the question of the credibility of the witness and the weight of the evidence were for the trial judge to determine. (People v. Najera, 75 Ill App2d 127, 221 NE2d 136; People v. White, 63 Ill App2d 105, 211 NE2d 9.) The trial judge having made this determination, it will not be disturbed by a court of review unless the evidence is so unconvincing and unreasonable or unsatisfactory as to leave in the minds of this court serious doubt of the defendant's guilt. People v. Scott, 38 Ill2d 302, 231 NE2d 441; People v. Taylor, 95 Ill App2d 130, 237 NE2d 797; People v. Garrett, 82 Ill App2d 192, 226 NE2d 429.

We conclude therefore that no reversible error was committed at the trial of this defendant. The judgment of the court is accordingly affirmed.

Affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.