**People of the State of Illinois, Plaintiff-Appellee, v. Leon Smith, Defendant-Appellant.**

Gen. No. 51,772.

First District, Third Division.

January 9, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall J. Hartman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John M. Goldberg, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Leon Smith was found guilty of armed robbery by a jury and was sentenced to a term of four to eight years in the penitentiary.

On October 16, 1964, at about 5:00 p. m., Harris Mosely and his wife were tending a hat cleaning and blocking store which they owned in Chicago. Both testified

that at that time a young man whom they knew as Eli Mohammed entered the store and asked to see some hats. Mrs. Mosely waited on him while Mosely continued working at his table in the area behind the front counter. As Mrs. Mosely was taking care of Mohammed an older man, whom the Moselys later identified as the defendant, entered the store and stood at the counter. At the rear of the store was a red box in which money was kept and the man kept glancing in the direction of the box while Mrs. Mosely talked with Mohammed. After a moment or two he pulled out a gun and said, "Lady, this is a stick-up." When he and Mohammed went behind the counter the Moselys ran out the back door to a neighboring store and called the police. When they returned, the red box, which contained $500 was missing.

The defendant's contention that he was not proven guilty beyond a reasonable doubt is untenable. He was positively identified at the time of his apprehension by Mrs. Mosely, and at his trial by her and her husband.

Although the evidence was sufficient to sustain the guilty verdict, trial errors require remandment for a new trial. The defendant testified that on October 16, 1964, he was ill at home, and that two nurses, his girl friend and other friends visited him. No witnesses supporting the alibi were produced.

During the State's first closing argument, the prosecutor commented on the absence of the witnesses and stated that the power of subpoena was available to the defense. He then said:

> "They had all the opportunity . . . to bring these people in with subpoenas. . . . They are not here for one very simple reason, it just didn't happen that way, and they are not going to get up on that stand and perjure themselves for Mr. Smith or anyone else."

In the State's second closing argument another prosecutor read to the jury a transcript of the defendant's testimony concerning his alibi witnesses. He followed this up by saying:

> "[Y]ou heard from this transcript that the defendant testified that these people were very good friends of his, lived in the same building . . . all had ample jobs. . . . Where are these people who have ample jobs? Why weren't they subpoenaed from their place of employment? Where are the nurses? Where are they? . . . Why don't they come? They don't want to lie for the defendant? Or is it that the defendant's testimony is not true? What do you think about it?"

 It was error to read from the transcript (People v. Willy, 30 Ill 307, 133 NE 859 (1921); Bulleri v. Chicago Transit Authority, 41 Ill App2d 95, 190 NE2d 476 (1963)) and it was error for both prosecutors to make the remarks they did about the absent witnesses. Seven subpoenas had been issued at the defendant's request; six were returned unserved and the one witness who had been served did not appear. The record indicates that the prosecutors knew this, and their statements about the defendant's not using the power of subpoena were unjustifiable. Also, their remarks that the witnesses did not come to court because they did not want to commit perjury were unfair. This implied either that the witnesses had been asked to testify and had refused or that they had not been asked because the defendant knew that their testimony would contradict his. Both implications carried a covert suggestion that the defendant was guilty of the robbery because the witnesses did not testify in his behalf. The general rule is that a defendant has no obligation to call witnesses and his not doing so raises no presumption of law that if called they would have testified unfavorably to him. People v. Munday,

280 Ill 32, 117 NE 286 (1917). See also People v. Smith, 74 Ill App2d 458, 221 NE2d 68 (1966).

■ When the defense is an alibi, this court has recognized an exception to the general rule. We have held that it is not improper for the State to comment upon the failure of a defendant to produce witnesses to support his testimony that he was in their company at the time of the alleged crime. People v. Sanford, 100 Ill App2d 101, 241 NE2d 485 (1968); People v. Gray, 52 Ill App2d 177, 201 NE2d 756 (1964). In the present case, however, the prosecutors' remarks went far beyond mere comment and were one of the two errors which deprived the defendant of a fair trial.

■ The other error was the admission of hearsay evidence. During her direct examination, Mrs. Mosely said that after the robbery the police showed her some pictures. The State developed the subject further when the arresting officer testified. The officer said that he showed twelve photographs to Mrs. Mosely. The prosecutor then asked:

> "Q. And out of those photographs, did she pick any?
> "A. Yes, sir, she did.
> "Q. Whom was that a photograph of?
> "A. She picked a photograph of Mr. Leon Smith."

The police officer's testimony as to what Mrs. Mosely did by way of identifying Smith was error. People v. Reeves, 360 Ill 55, 195 NE 443 (1935); People v. Wright, 65 Ill App2d 23, 212 NE2d 126 (1965). His testimony went far beyond hers and obviously was offered to strengthen the identification and to prove the truth of the matter asserted in his testimony, that is, that Mrs. Mosely picked Smith out as the person who robbed her.

■ ■ The officer's testimony about the identification made by Mrs. Mosely at the police station was also

hearsay. In reference to the line-up the officer was asked:

"Q. Did Mrs. Mosely view the line-up?
"A. Yes, sir, she did.
"Q. And out of that line-up did she pick anybody?
"A. Yes, sir, she did.
"Q. Whom did she pick?
"A. She picked out Mr. Leon Smith."

This testimony, however, was not harmful to the defendant for Mrs. Mosely had testified that a few days after the robbery she went to the police station and picked Smith out of a lineup of five men. She said the men had their backs to her and the police had them turn around one by one. When Smith turned she hit him on the shoulder and said, "This is the man, this is the man." Mrs. Mosely's testimony was uncontradicted. (Smith, himself, said she identified him at the lineup and added, "In fact, I do believe within my heart she thinks I am the one, but she is just mistaken.") The officer's testimony about the lineup identification did not inject new evidence into the trial; it merely repeated what had already been proven by competent and undisputed testimony. People v. Sterling, 341 Ill 112, 173 NE 139 (1930). Under these circumstances the officer's incompetent testimony was not prejudicial.

The defendant also contends that the court unduly restricted cross-examination in reference to the arrest, identification and trial of Eli Mohammed, and erred in sentencing him peremptorily without holding a mitigation hearing. In view of our decision reversing the judgment, these errors, which are unlikely to arise at a future trial, need not be discussed.

Reversed and remanded.

SULLIVAN, P. J. and SCHWARTZ, J., concur.