THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD WRONA, Defendant-Appellant.

(No. 72-87;

Third District—August 17, 1972.

2

Louis P. Walter, Jr., of Ohio, for appellant.

Peter J. Paolucci, State's Attorney, of Lacon, for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

A jury in the Circuit Court of Marshall County found the defendant, Harold Wrona, guilty of theft. He was sentenced to a term of two to four years to run consecutive to a penitentiary sentence currently being served.

The defendant urges several grounds of error, the first contention being that he was the victim of an illegal search and seizure.

At about 12:30 o'clock P.M. on Oct. 9, 1969, Clifford Westman, an employee of Read Brothers Hardware & Appliances, in Henry, Illinois, observed from his machine shop, a 1960 Pontiac at the service elevator of Read Brothers. The automobile was also observed by a fellow employee, Glen Gingrich. Both testified that the elevator was 20 to 25 feet from their point of observation, that it was a fair day and visibility was good. Mr. Gingrich identified the defendant as one of the men he had seen that day.

They described the 1960 Pontiac as sharp looking, grayish blue, very polished, with out of state license plates with a dark blue background and white lettering. The license plates later were shown to be issued by South Carolina. They further testified that two persons including defendant took two cardboard cartons off the service elevator and placed them in the automobile. Their suspicions were aroused when the car drove off without stopping at the business department of Read Brothers. They saw the car headed for State Route 18. A call was sent to the Sheriff's office at about 1:00 o'clock P.M. The Sheriff's department sent a bulletin to the surrounding counties.

Donald Clausen, a police officer of Peru, Illinois, received the radio message describing the car as above. He then parked his squad car on the Cedar Point Junction of Illinois Route 51. Shortly, he saw a car which conformed to the description and which had two male passengers. He followed the car while radioing ahead for assistance. The car turned off Route 51 onto Route 6 and was blocked at the Westclox

factory by Officer Swierkosz of the La Salle Police Department. The time was approximately 2:00 o'clock P.M.

The persons occupying the 1960 Pontiac were Salvatore Vitale the owner driver and the defendant both known to the officers. They were placed under arrest about two minutes after the car was stopped. Route 6 in the City of Peru, at the point where the automobile was stopped was a busy thoroughfare and traffic was congested both ways due to the position of the police vehicles and the 1960 Pontiac.

The automobile was driven directly to the Peru Police Station and within two minutes thereafter a search of the car was made at which time two cardboard cartons were discovered which subsequently were shown to contain television sets taken from Read Brothers.

Defendant argues that the description of the automobile and of the parties was not sufficient to justify the arrest and consequently if the arrest was invalid the search was invalid.

■■ The existence of "probable cause" justifying an arrest without a warrant, is determined by factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act. *Draper v. United States,* 358 U.S. 307, 3 L.Ed.2d 327; *People v. Jones,* 31 Ill.2d 42; 3 I.L.P. Arrest Sec. 4.

■■ An officer may act on information acquired by another officer who is working with him (*People v. Peak,* 29 Ill.2d 343), or on information on the police radio. *People v. Buck,* 92 Ill.App.2d 16.

■■ All the circumstances under which defendant was arrested must be taken into consideration and we cannot say that it was unreasonable for the officers to believe, nor can we say that a prudent and cautious man would not have strongly believed under the existing circumstances that the defendant had been engaged in the commission of a crime.

■■ Having determined that the arrest was valid we must turn to the argument that the "at the station" warrantless search of the vehicle was invalid. At one time the courts held that such a search could not be justified as incident to arrest because there was no longer a "need to prevent the destruction of evidence of the crime." (*Preston v. U.S.* (1964), 376 U.S. 364.) Even so, where the circumstances of the particular case were such that it was impractical to conduct the search at the scene of the arrest, the courts upheld the search. (*U.S. v. Evans,* 385 F.2d 824.) And in *Chambers v. Moroney,* 399 U.S. 42, the court allowed an "at the station" search a reasonable time after the stopping of the automobile. In *People v. Weaver,* 41 Ill.2d 434, the court held that such a search was reasonable under the circumstances. *People v. Joyner,* 50 Ill.2d 302 on 311 and 312, succinctly discusses the recent cases. We hold

that the search of the car was reasonable and did not violate the constitutional rights of the defendant.

Defendant next contends that there was no proper chain of possession of the television sets.

The record shows that after the officers discovered the sealed cartons in the trunk of the car, they immediately closed and locked the trunk of the car and called the Marshall County Sheriff who arrived in an hour or hour and a half. The key to the trunk was in the sole and exclusive possession of the arresting officer. The cartons were shown to the Sheriff on his arrival, they were in the same condition as before. The trunk was again closed and the keys to the car given to the Sheriff who drove the car to Lacon, the Marshall County Seat. The Sheriff was at all times observed and in the view of his Chief Deputy. Upon reaching the Marshall County Jail the trunk was opened, the cartons were unsealed to establish that the serial numbers on the sets were the same as those on the invoice to Read Brothers. (They were.) The sets and cartons were then placed in the evidence locker of the Sheriff's office where they remained until trial. The locker was available to all members of the Sheriff's police staff.

Mr. Francis Read, a partner of Read Brothers, testified that he had seen the cartons being delivered on the morning of Oct. 9, 1969, that the value of each set was more than $150.00 and that Read Brothers owned the sets upon delivery. He further identified the cartons as the same ones he had seen on his dock on Oct. 9, 1969.

The bookkeeper for Read Brothers testified that she had signed the shipping documents when the cartons were delivered and before signing she had inspected the cartons for external evidence of damage, she also pushed the boxes to check if they contained merchandise. She identified the cartons in court as being the same she had examined on Oct. 9, 1969 and that the model and serial numbers corresponded.

The rule that an object must be in substantially the same condition when offered in evidence as it was when the crime was committed does not require the prosecution to exclude all possibility that the article may have been tampered with; rather the court must be satisfied that in reasonable probability the article has not been changed in any important aspect. The foundation for the introduction of an object may be laid through the establishment of a chain of possession. *People v. Greer*, 28 Ill.2d 107, and in the absence of any indication or suggestion of substitution, alteration or other form of tampering, we are of the opinion that the protective techniques employed were sufficient to make admissible the cartons and their contents. *People v. Pittman*, 28 Ill.2d

900; *People v. Harper*, 26 Ill.2d 85, 91; *People v. Hines* (1971), 131 Ill.App.2d 628, 267 N.E.2d 696.

The defendant also urges that the evidence did not establish his guilt beyond a reasonable doubt. The contention rests largely on the fact that the eyewitness who identified him as being at the scene of the crime was an employee of Read Brothers who therefore had an interest and that the testimony was improbable in view of defendant's alibi testimony.

Salvatore Vitale, who had previously plead guilty to this offense testified that the first time he saw the defendant that day was at a gas station at the Oglesby Spur at 1:30 P.M. on the afternoon of the crime. On cross-examination he admitted that he had been convicted of four felonies within the past ten years.

Helen Wrona, the wife of defendant, testified that during the morning in question she and her husband had been shopping in Peru, that they then drove to the Oglesby Spur to get their oil changed, that while there Salvatore Vitale drove into the service station and her husband got into the car with Salvatore's dog and both men drove off.

■■ Defendant did not testify.

The credibility of the witnesses was for the jury. Cases cited by defendant in support of his argument were rape cases stating the general rule of corroboration of the female and have no application here. The courts have repeatedly held that it is the function of the jury to make a determination of the credibility of witnesses and the weight to be given to the testimony. This court will not substitute its judgment for that of the jury merely because the evidence is conflicting. (*People v. Fort*, 14 Ill.2d 491; *People v. Wheeler*, 5 Ill.2d 474.) There was more than positive identification of the defendant by a single witness here. The testimony of Officer Clausen that he first saw defendant in the car at the Cedar Point Junction (a point several miles south of the Oglesby Spur) and that the car never stopped at the Oglesby Spur as it went north into Peru would certainly be considered by the jury. On cross-examination of Helen Wrona it was brought out that she had never before had the oil changed at the Oglesby Spur and further, that the Oglesby Spur was from 8 to 10 miles out of the way.

■■ We cannot say that the conviction of the defendant rests upon identification which is doubtful, vague and uncertain and which does not produce an abiding conviction of guilt which situation would require us to reverse. *People v. Kidd*, 410 Ill. 271.

■■ From a review of the entire record we find that defendant was properly found guilty beyond a reasonable doubt and that the evidence used against him was not obtained unlawfully.

Defendant asks that his punishment be reduced. At the hearing on aggravation and mitigation it was disclosed that defendant was born June 4, 1934, and at the age of 17 he was first convicted of a burglary and was given probation. He violated the terms of his probation about seven months later and he was then sentenced to the penitentiary for 1 to 10 years. In 1961 he was again convicted of burglary and was sentenced to 2 years to 2 years and 2 months. In May of 1970 he was sentenced to 90 days in Vandalia. In March of 1971 he was sentenced to 45 days and one year concurrent. In September 1971 he was convicted of Burglary, Bail Bond Violation, and Escape and was sentenced to 3 to 4 years to be served concurrently with the March 1971 sentence. On Nov. 24, 1971, he was convicted on the instant case and given a consecutive sentence.

██ "There are, unfortunately, in our society habitual offenders who are beyond the pale of redemptive treatment." (*Abernathy v. People,* 123 Ill.App.2d 263, 271.) It can be concluded from the record in this case that the defendant is a habitual offender. The trial judge made a sound determination of the punishment to be imposed and we will not disturb it. The judgment of the Circuit Court of Marshall County is affirmed.

Judgment affirmed.

STOUDER, P. J., and SCOTT, J., concur.