THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BOOKER HANSON, Defendant-Appellant.

(No. 56311;

First District (3rd Division)—March 1, 1973.

Thomas J. Grippando and Charles R. Staley, both of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

Booker Hanson was found guilty of theft (Ill. Rev. Stat. 1969, ch. 38, par. 16—1(a)) and sentenced to jail for the term of six months. The evidence presented by the State at the non-jury trial consisted of the testimony of George Scanlon, the complainant, and a Chicago police officer. Hanson denied participation in the offense and claimed he was at home watching television; his mother corroborated his whereabouts.

Of the points raised on appeal, one is decisive: the contention that reversible error was committed when a police officer was permitted to testify, in contradiction to Scanlon, that Scanlon identified Hanson from a photograph as one of his three assailants.

Hanson, Robert Walton and David Blackwell were charged with stealing Scanlon's money and were tried together. At a pretrial hearing on a motion to suppress identification, Scanlon testified that he was called

to a police station to view suspects. As he stood in a hallway, Hanson, Walton and Blackwell were brought before him individually. He said that he was not sure of Walton and Blackwell but was of Hanson. The court reserved its ruling on the motion. At the trial the 60-year-old victim testified that he was employed by a liquor store and was depositing some trash in an alley container around 12:30 A.M. As he opened the lid, someone approached him from behind, twisted his arm and covered his face. He was thrown to the ground and one of three assailants took a key case and $12 from his pockets. He "got a look" from the distance of two and a half feet at the person who was holding him and he identified Hanson as that assailant. The other two men were not seen face to face; Scanlon's opportunities for viewing them were limited to his observations as they fled down the alley. However, he described them as being heavier than himself, about five feet nine inches in height and having the same physical characteristics. He estimated the commission of the offense took one minute or a little longer. There was no testimony about the lighting conditions.

On cross-examination, Hanson' counsel asked Scanlon about the police station identification:

> "Q. You never saw this man, is that correct, before you were in the police station?
> A. Oh, they had pictures of them.
> Q. Police had photographs?
> A. Yes.
> Q. How many photographs?
> A. There is two cards, one on each card. ·
> Q. There were four photographs all together?
> A. Two cards. ·
> Q. How many of those did you identify?
> A. Well, I picked the two out.
> Q. Two out of four. All right. * * *."

On redirect examination the State pursued the subject and Scanlon pointed to Walton and Blackwell as the men whose pictures he picked out.

The arresting officer related the details concerning the police procedures. He testified that he showed Scanlon approximately seven pictures and the victim identified those of Hanson and Walton. On cross-examination the officer admitted that he showed the three defendants to Scanlon one at a time. He denied asking, "Is this the man who did it?" when Scanlon was confronted with each defendant.

The State rested its case and, pursuant to a motion for a directed

finding, the court dismissed the charges again Walton and Blackwell. The motion was overruled in respect to Hanson, who thereupon presented evidence concerning his alibi.

■■ Hanson's conviction rests upon his identification by a single witness who saw him fleetingly in the middle of the night in an alley. There was no evidence concerning the alley's illumination. Under these circumstances, where the possibility of a mistaken identification was so serious, it was very important that the witness' identification be uninfluenced by post-arrest procedures and that the defendant's trial be free of error.

■■■ There was no excuse for the one-on-one confrontation in this case and there was no justification for the officer's testimony that Scanlon selected Hanson's picture as one of the thieves. Testimony of this kind has been condemned repeatedly. In *People v. Smith* (1969), 105 Ill. App.2d 8, 245 N.E.2d 23, it was held to be one of the two errors which deprived the defendant of a fair trial. The prosecuting witness testified that after she was robbed the police showed her some pictures. An officer testified that she picked out a picture of the defendant. This court stated: "His testimony went far beyond hers and obviously was offered to strengthen the identification and to prove the truth of the matter asserted in his testimony, that is that Mrs. Mosely picked Smith out as the person who robbed her." The same finding of prejudicial error was made in *People v. Townsend* (1969), 111 Ill.App.2d 316, 250 N.E.2d 169, where the complaining witness said she selected the picture of one of the two defendants and a police officer testified that she identified the pictures of both defendants. See also, *People v. Harrison* (1962), 25 Ill.2d 407, 185 N.E.2d 244; *People v. Wright* (1965), 65 Ill.App.2d 23, 212 N.E.2d 126.

■■ The State submits that the rule pronounced in the above cases should not be followed because the defendant did not object to the officer's testimony and because the inquiry into the photographic identification was initiated by the defense. Plain errors affecting substantial rights may be considered on review although they were not brought to the attention of the trial court. (Ill. Rev. Stat. 1969, ch. 110A, par. 615(a).) Despite the fact that no objection was made to inadmissible testimony, this court will consider assignments of error which are so erroneous and prejudicial as to prevent the defendant from receiving a fair trial. (*People v. Harrison; People v. Wright.*) There have been instances where testimonial errors pertaining to identification have been held harmless but these occurred in cases in which the officer's testimony was cumulative in that it merely reflected what had already been proven by competent testimony. *People v. Campbell* (1969), 113 Ill. App.2d 242, 252 N.E.2d 26; *People v. James* (1969), 109 Ill.App.2d 328, 248 N.E.2d 777; *People v. Smith.*

The inquiry into Scanlon's selection of pictures was initiated by the defense, but his testimony that he picked out pictures other than Hanson's was elicited by the State. The State was responsible for this damaging admission, not the defense. In questioning the officer about the selection, the State was endeavoring to rehabilitate its case even though this meant impeaching its own witness. The officer's testimony did not repeat what was already proven, it contradicted Scanlon's testimony. It was not offered to rebut defense evidence, it was offered to bolster Scanlon's in-court identification of the defendant.

The testimony was inadmissible and, in this case, extremely prejudicial. The judgment is therefore reversed and the cause is remanded.

Reversed and remanded.

McNAMARA and McGLOON, JJ., concur.