THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EUGENE "PEPPER" SMITH, Defendant-Appellant.

(No. 73-29;

Fifth District—August 9, 1974.

Murry A. Marks, of Clayton, Missouri, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Raymond F. Buckley, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal from a judgment entered by the circuit court of Madison County on a jury verdict against the defendant, Eugene "Pepper" Smith, for the offense of murder and the imposition of a sentence of 14 to 42 years in the penitentiary.

On November 12, 1969, an attempted armed robbery of Louis Knowles took place in the Ridge Package Liquor Store in Alton. The attempt resulted in an exchange of gunfire between Louis Knowles and the perpetrator of the attempted armed robbery. In the course of the exchange of gunfire Louis Knowles was mortally wounded. He died 2½ weeks thereafter.

The case against the defendant is based in part upon: (1) the "dying declarations" of the victim, Louis Knowles, made to Magdaline Knowles, wife of the victim; (2) the testimony of Detective John Parker and Captain John Light of the Alton Police Department as relating to "dying declarations" of the victim made at the hospital; (3) the testimony of various physicians as to the extent of the victim's injuries, the cause of death, and the removal of one of the "slugs" from the body of the victim; (4) admissions of the defendant made to Edward Smart while both were inmates in the Madison County Jail prior to defendant's indictment; (5) the testimony of Alma Kinsella who identified the defendant as the person she saw enter the Ridge Package Liquor Store shortly before the offense; (6) the testimony of Susan Komar, the supervising criminalist at the Illinois Bureau of Identification; (7) the introduction into evidence of a chrome-plated .32-caliber pistol found by Russell Brown, one glass jar containing a slug allegedly removed from the victim, a plastic envelope containing three spent slugs from a .32-caliber pistol removed by the police from behind the counter of the Ridge Package Liquor Store immediately after the shooting; and (8) the testimony of patrolman

Fleming who picked up the gun found by Russell Brown and Lieutenant Sandidge who retrieved the slug, allegedly removed from the victim, from the hospital.

The defendant filed: a pre-trial motion to suppress dying declarations; a pre-trial motion to suppress any and all statements, confessions, or admissions of the defendant; and a pre-trial motion to exclude the eyewitness identification of Alma Kinsella. In an order entered March 24, 1971, the motion to suppress the eyewitness identification of Alma Kinsella was denied; the motion to suppress the statement of Edward Smart was granted; the motion to suppress dying decarations was denied with respect to evidence relative to any dying declaration made by the victim on November 29, 1969, to the police officers, John Light and John Parker, and Mrs. Geraldine Hill, and was granted with respect to any dying declarations made to Magdaline Knowles, and was granted with respect to the witness Lula Shake "save for the language of Lula Shake, to wit; 'I identified the son of a bitch, Luly.'" The order of March 24, 1971, concluded by stating that:

> "It is the further finding of this Court that the deceased was at the time of making statements to the police officers, John Light and John Parker and the other witness, Geraldine Hill, as well as the witness, Lula Shake, beyond a reasonable doubt, of the opinion that he was about to die.
>
> It is hereby ordered, adjudged and decreed that the Court does find as a matter of law and beyond a reasonable doubt relative to those statements of the deceased, Louis Knowles, which have heretofore been admitted into evidence that the same were made while the decedent was "in extremis" and in contemplation of his impending death and finds beyond a reasonable doubt that the same were dying declarations within the meaning of the law."

Subsequently, the court, on March 26, 1971, revoked its March 24, 1971, order, with respect to granting of the motion to suppress the testimony of Magdaline Knowles.

The State appealed the court's ruling with respect to the suppression of the statement made by the defendant to Edward Smart while both were incarcerated in the Madison County Jail. This court held in *People v. Smith*, 5 Ill.App.3d 642, 283 N.E.2d 736, that "The statements made by the defendant to Smith were not post-indictment statements of the accused to a government agent," and since there is no case which "prohibits the use of volunteered incriminatory statements which are gathered because of the cooperativeness of an informer in whom a prisoner has misplaced his confidence," the statements made to Edward Smart by the defendant were admissible as admissions. Accordingly, this court reversed

this portion of the trial court's order and remanded for further proceedings not inconsistent with its opinion. Thereafter a jury trial was held and the aforementioned evidence was presented.

In this appeal the defendant contends: first, that the trial court erred in overruling appellant's objections to "the lack of a proper chain of custody in regard to certain State's exhibits and erred in admitting other evidence despite counsel's failure to object"; secondly, that the trial court erred "in allowing into evidence those purported dying declarations previously excluded by Judge Kinney"; thirdly that the trial court erred "in admitting into evidence, and trial counsel erred in failing to object, to all statements which were admitted into evidence as purported dying declarations" and thereby defendant "was deprived of a fair and impartial trial and due process of law"; fourthly, that the trial court erred in admitting the eye-witness identification of the defendant by Alma Kinsella, that such violated the sixth and fourteenth amendments to the United States Constitution, and that the defendant's being placed in a lineup without counsel deprived him of due process of law; fifthly, that the court erred in overruling defendant's motion for a directed verdict of acquittal at the close of all the evidence; sixthly, that the State failed to sustain their burden of proving the defendant guilty "beyond a reasonable doubt relative to" defendant's "affirmative defense of alibi"; and lastly, that the trial court erred in "excluding or striking" the testimony of defense witnesses Edward Welch and Robert Trone.

 Here defendant contends that certain evidence heard without objection was so prejudicial as to require reversal. It has been frequently stated that failure to object to the admission of evidence operates as a waiver of objections and precludes consideration of the question on appeal. (See, *e.g., People v. Scott,* 52 Ill.2d 432, 288 N.E.2d 478.) Notwithstanding the fact that no objection was made to inadmissible testimony, appellate courts will consider errors which are so prejudicial as to clearly deny defendant a fair trial (*People v. Mays,* 48 Ill.2d 164, 269 N.E.2d 281; *People v. Hanson,* 10 Ill.App.3d 593, 295 N.E.2d 120), or where, by reason of counsel's failure to object, the defendant contends that his appointed counsel was incompetent (*People v. Oden,* 20 Ill.2d 470, 170 N.E.2d 582). Although the defendant contends that it was "error" for his counsel not to object to the admission of certain evidence, he does not argue that his counsel was incompetent and, therefore, we need only determine whether the evidence was erroneously admitted and, if so, was so prejudicial as to clearly deny defendant a fair trial under the "plain error" doctrine provided in Supreme Court Rule 615. (Ill. Rev. Stat. 1971, ch. 110A, par. 615.) In making this determination, if it appears that the result would not have been different had the errors complained

of not occurred, the judgment of conviction will not be set aside. *People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1; *People v. Anderson*, 48 Ill.2d 488, 272 N.E.2d 18; *People v. Tribbett*, 41 Ill.2d 267, 242 N.E.2d 249; *People v. Douglas*, 130 Ill.App.2d 938, 267 N.E.2d 43.

■■ Defendant's first contention is based in part on the trial court's failure to sustain defense counsel's objection to State's Exhibit No. 9, a small glass jar containing a .32-caliber slug allegedly removed from the body of Louis Knowles. The basis for said objection was a lack of a proper chain of custody. Foundation for introduction of an object may be laid either through its identification by a witness or through establishment of a chain of possession (*People v. Greer*, 28 Ill.2d 107, 190 N.E.2d 742); both, identification and establishment of a chain of possession, are not, however, required as such a requirement would pose an unnecessary burden and would not assure a fairer trial of the accused (*People v. Patterson*, 2 Ill.App.3d 902, 274 N.E.2d 467, *supplemented*, 2 Ill.App.3d 902, 276 N.E.2d 354). In the instant case Dr. Edward V. Ferguson testified that after a slug was removed from the body of Louis Knowles, "that it was given to the pathologist at the hospital." After which the following colloquy occurred between Dr. Ferguson and the State's Attorney:

"Q. And who might that be?

A. Dr. Stromsdorfer.

Q. And was that given to him by you or someone else?

A. That was given to him by the nurse in charge of the operating room.

J. All Right. Did she do that in your presence?

A. Well, she put the bullet into a special container and was putting identifying names and so forth on it, and I did not see it after it left the operating room."

The next person to testify with respect to this exhibit was Dr. Stromsdorfer. He testified that the small glass jar, which was a part of State's Exhibit No. 9, was similar to those kept at St. Joseph's Hospital. He further noted that the jar was "labelled with a label, with the name of Louis Knowles on it, bullet, room 400, which is the same number as the intensive care unit." Although he could not ascribe the handwriting on the label to anyone "specific at the hospital" he testified that "it resembles the handwriting" on other labels on specimen containers at the hospital. He concluded by stating that the slug shown him in court was similar to the one he had previously examined. Lieutenant Sandidge then testified that he received the slug in the glass jar from Mrs. Latham, an employee of Dr. Stromsdorfer. When shown State's Exhibit No. 9, Lieutenant Sandidge stated: "This is the container that she gave me when I went to the hospital. It has my initials on the evidence seal." He then stated that

he had scratched his initials, D. E. S., into the base of the slug with a metal scribe. He identified the scratching on the bottom of the slug contained in State's Exhibit No. 9, as the "D. E. S." he had previously inscribed. In view of the positive identification of Lieutenant Sandidge we need not concern ourselves with the chain of possession after this point. Thus the only "break," if any, in the chain of possession occurred between the time that Dr. Ferguson last saw the jar containing the slug and when Dr. Stromsdorfer received it for examination.

The rule that an object must be in substantially the same condition as when the crime was committed does not require the State to exclude all possibility that the article may have been tampered with, provided the court is satisfied that in reasonable probability it has not been changed in any important aspect. (*People v. Wrona*, 7 Ill.App.3d 1, 286 N.E.2d 370.) And, in the absence of any indication or suggestion of substitution, alteration or other form of tampering, we are of the opinion that the protective and identification procedures employed within the hospital were sufficient to make admissible State's Exhibit No. 9. *People v. Pittman*, 28 Ill.2d 100, 190 N.E.2d 802; *People v. Harper*, 26 Ill.2d 85, 185 N.E.2d 865; *People v. Wrona*, 7 Ill.App.3d 1, 286 N.E.2d 370; *People v. Appleton*, 1 Ill.App.3d 9, 272 N.E.2d 397.

Defendant next argues that "the failure of appointed counsel to object to State's Exhibits 10, 11, 12, and 13 constitutes plain error within the purview and meaning of Rule 615." The defendant does not specify on what basis this objection should have been made, therefore, we can only infer, from the discussion in defendant's brief immediately preceding this allegation, that basis was a lack of a proper chain of custody. Although there may be some dispute with respect to the chain of possession of State's Exhibit 10, three spent slugs from a .32-caliber pistol removed from behind the counter of the Ridge Package Liquor Store, and State's Exhibit 12, a chrome plated pistol found by Russell Brown, both were adequately identified or marked prior to any alleged "break" in the chain of possession. The three spent slugs were marked by detective Carl Logan with his initials, "C. L.", before they were shipped to the crime laboratory. The .32-caliber pistol can be clearly identified by its serial number, 275783, which was recorded by Patrolman Fleming before it was sent to the crime laboratory. The foregoing procedures vitiated the necessity of establishing a chain of possession with respect to State's Exhibits No. 10 and 12. (See *People v. Patterson*, 2 Ill.App.3d 902, 272 N.E.2d 467, *supplemented*, 2 Ill.App.3d 902, 276 N.E.2d 354.) State's Exhibit No. 11, shell casings taken from State's Exhibit No. 12, after it was recovered, and State's Exhibit No. 13, the box and wrappings in which State's Exhibits Nos. 9, 10, 11, and 12 were sent to the crime laboratory, were not of an

incriminating nature and did not so prejudice the defendant as to constitute "plain error."

The defendant finally argues that all of the State's Exhibits Nos. 9, 10, 11, 12, and 13 were irrelevant and their admission was "erroneous and a non sequitur." We find no merit in this argument since those exhibits which had any prejudicial tendency, State's Exhibits Nos. 10 and 12, were not irrelevant and the remaining exhibits even if irrelevant were not so prejudicial as to constitute "plain error."

■■ Due to the correlation of defendant's second and third contention they will be considered at the same time. The defendant's second contention is that the trial court erred "in allowing into evidence those purported dying declarations previously excluded by Judge Kinney." The defendant's third contention is that the trial court erred "in admitting into evidence, and trial counsel erred in failing to object, to all statements which were admitted into evidence as purported dying declarations" and thereby the defendant "was deprived of a fair and impartial trial and due process of law." Before a court may admit a statement as a dying declaration it must be satisfied beyond a reasonable doubt that the alleged dying declaration was made while the declarant believed he was beyond hope of recovery and near death, i.e., "in extremis." (*People v. Beier,* 29 Ill.2d 511, 194 N.E.2d 280.) That the judge used this standard in his determination is evident from the wording of the order previously set forth. In 5 *Wigmore on Evidence,* § 1442, at 235, 238 (3d ed. 1940), it is stated:

> "In ascertaining this consciousness of approaching death, recourse should naturally be had to all the attending circumstances. * * * The circumstances of each case will show whether the requisite consciousness existed; and it is poor policy to disturb the trial judge upon the meaning of these circumstances."

A similar view was espoused by our Supreme Court in *People v. Tilley,* 406 Ill. 398, 94 N.E.2d 328. Therein the court stated that:

> "The questions which go to the credibility of * * * witnesses and the weight to be given their testimony, were matters for the court on the preliminary examination and later for the jurors when the witnesses testified before them. In such function this court will not substitute its judgment for that of the court or jury." (406 Ill. at 407.)

We find no reason to disturb the order with respect to statements of the deceased which the court determined to be dying declarations.

Since the defense counsel did not object to certain objective evidence of circumstances attending the dying declarations and subjective opinions of the witnesses allegedly excluded by the modified order, our inquiry is

limited to determining if the erroneously admitted evidence so prejudiced the defendant that the result would have been otherwise had such evidence been excluded. At the trial various witnesses testified as to the appearance, and their impression of the condition, of the decedent, Louis Knowles. Although such testimony was properly excluded under the order, we cannot say that the admission of such evidence was so prejudicial as to require reversal, since from competent evidence it was determined that the victim was *"in extremis."*

■■ The defendant's fourth contention is that the trial court erred in admitting the eye-witness identification of the defendant by Alma Kinsella, that such violated the sixth and fourteenth amendments to the United States Constitution, and that the defendant's being placed in a lineup without counsel deprived him of due process of law. In *Kirby v. Illinois*, 406 U.S. 682, 32 L.Ed.2d 411, 92 S.Ct. 1877, the United States Supreme Court held that a police station showup that took place after the defendant's arrest but before he had been indicted or otherwise formally charged was not a "criminal prosecution" at which the defendant had a constitutional right to be represented by counsel. Similarly, Illinois courts have held that the failure to supply a defendant with counsel at a pre-indictment lineup does not vitiate his conviction. (*People v. Reese*, 54 Ill.2d 51, 294 N.E.2d 288; *People v. Pierce*, 53 Ill.2d 130, 290 N.E.2d 256; *People v. Patrick*, 53 Ill.2d 201, 290 N.E.2d 227; *People v. Bates*, 9 Ill.App.3d 882, 293 N.E.2d 358.) In the instant case the lineup in which defendant participated without counsel was prior to his being indicted and the only evidence in the record directly relating to this subject was the testimony of Detective John Parker who stated that the defendant agreed to waive his right to have an attorney present at the lineup and signed a written waiver to that effect. Under such circumstances we find no merit in defendant's claim that he was denied assistance of counsel at a crucial stage in the proceedings.

After reviewing the testimony recounting the procedure used at the lineup and considering the totality of the surrounding circumstances, we agree with the denial of defendant's motion to suppress the eye-witness identification of the defendant by Alma Kinsella and find that the confrontation was not unnecessarily suggestive or conducive to irreparable mistaken identification. (*People v. Lee*, 44 Ill.2d 161, 254 N.E.2d 469; *People v. Bates*, 9 Ill.App.3d 882, 293 N.E.2d 358.) The defendant has failed to sustain *his* burden of proving that the lineup was conducted in an unnecessarily suggestive manner. (*People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1; *People v. Dailey*, 51 Ill.2d 239, 282 N.E.2d 129.) Whatever equivocation of the identifying witness there may have been affected her credibility in the eyes of the jury not the admissibility of her identification

of the defendant. *People v. Stringer*, 52 Ill.2d 564, 289 N.E.2d 631; *People v. Oswald*, 26 Ill.2d 567, 187 N.E.2d 685; *People v. Pelkola*, 19 Ill.2d 156, 166 N.E.2d 54; *People v. Washington*, 121 Ill.App.2d 174, 257 N.E.2d 190. ▆▌ The main thrust of defendant's fifth and sixth contention is the argument that the State failed to sustain its burden of proof. Defendant's sixth contention alleges that the State, in particular, failed to sustain this burden with respect to defendant's "affirmative defense of alibi." In support of this contention the defendant cites the abstracted opinion of *People v. Morris*, 90 Ill.App.2d 208, 234 N.E.2d 52, and quotes the following language therefrom:

> "If the issue of alibi is raised, it is incumbent upon the State to prove the Defendant guilty beyond a reasonable doubt as to that particular issue as well as to all other elements of the crime charged."

We have no quarrel with this pronouncement, in fact, a defendant need not prove his defense of alibi beyond a reasonable doubt to entitle him to acquittal; it is sufficient if the defense, on that point, raises a reasonable doubt of his presence at the time and place of the offense charged. (*People v. Brown*, 52 Ill.2d 94, 285 N.E.2d 1.) However, the trier of fact is not obligated to believe the alibi testimony over positive identification of the accused; even though given by a greater number of witnesses. (*People v. Jackson*, 54 Ill.2d 143, 295 N.E.2d 462; *People v. Catlett*, 48 Ill.2d 56, 268 N.E.2d 378; *People v. Polk*, 10 Ill.App.3d 408, 294 N.E.2d 113.) There is ample testimony in the record to place the defendant at the Ridge Package Liquor Store at the time of the offense charged. We find the language of our supreme court in *People v. Jackson*, 54 Ill.2d 143, 295 N.E.2d 462, particularly appropriate. That court, after stating that there was no obligation to believe alibi testimony over positive identification of the accused, went on to state that:

> "The trier of fact here was in a superior position to observe the demeanor of these witnesses during examination and to consider their obviously strong interest in exonerating the defendant. We shall not disturb its findings in that regard." (54 Ill.2d at 149.)

Inasmuch as there was substantial competent evidence to sustain the jury's finding of guilty, we likewise find no merit in defendant's fifth contention, that he was entitled to a directed verdict of acquittal at the close of all the evidence.

▆▌ The defendant's final contention is that the trial court erred in "excluding or striking" the testimony of defense witnesses Edward Welch and Robert Trone. The testimony of these witnesses related to a specific act on the part of Edward Smart, a State's witness, which was proffered by the defense in an attempt to impeach Smart. It is permissible to show

that a witness in a criminal case has a bad reputation for truth and veracity (*People v. Nash*, 36 Ill.2d 275, 222 N.E.2d 473, *cert. denied*, 389 U.S. 906); however, it is not permissible to reflect on a witness's credibility by establishing that on a former occasion he lied about a totally unrelated matter. *Fugate v. Sears, Roebuck & Co.*, 12 Ill.App.3d 656, 299 N.E.2d 108; *Rose v. B. L. Cartage Co.*, 110 Ill.App.2d 260, 249 N.E.2d 199.

A reading of the record discloses that while defendant was not given a perfect trial, he was given a fair trial. For the reasons we have set forth we affirm the judgment of the circuit court of Madison County.

Judgment affirmed.

G. MORAN, P. J., and CREBS, J., concur.